UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL M. HOAG, a single person,<br><br>             Plaintiff,<br><br>    v.<br><br>CITY OF QUINCY, QUINCY POLICE DEPARTMENT, OFFICER THOMAS CLARK,<br><br>           Defendants. | NO.  2:14-cv-0363-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 9, and Plaintiff's Motion to Certify Questions of State Law to Washington Supreme Court. ECF No. 15. The motions were heard without oral argument.

### *Facts*

On September 20, 2012, Officer Thomas Clark, an officer with the City of Quincy Police Department, pulled over a semi-truck driven by Daniel M. Hoag for going ten miles above the speed limit. Officer Clark asked Hoag for his license, registration, medical card, and log book. Hoag provided all the requested documents except the log book, claiming Officer Clark did not have the right to look at it. Hoag told Officer Clark that only a state trooper or an individual certified by the Federal Motor Carrier Safety Administration could request the log book. Officer Clark returned to his vehicle and checked if any state patrol

**ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT** # 1

inspection officers were available to assist him. No inspection officers were available, but an officer informed Officer Clark that Officer Clark did have authority to request the log book and a statute was provided.

Officer Clark returned to the truck and saw Hoag writing in his log book. The officer opened the truck door and again demanded the log book. Officer Clark then took Hoag into custody for obstruction of a law enforcement officer. Hoag was issued a criminal citation for obstruction and two infractions—one for speeding and one for a log book violation—and then released from the patrol car. All three charges were eventually dismissed. Hoag filed suit in the Superior Court for the State of Washington in Grant County alleging violations of his Fourth Amendment rights under 42 U.S.C. § 1983, as well as claims under the Washington state constitution. Defendants removed the case to this Court, where they filed a motion for summary judgment. ECF No. 9. Plaintiff responded and also filed a motion to certify questions of state law to the Washington Supreme Court. ECF No. 15.

### *Motion Standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

In addition to showing that there are no questions of material fact, the moving party must show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000).  The moving party

**ORDER GRANTING DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT** # 2

is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### *Analysis*

Although Hoag's complaint is multifaceted, the pertinent questions are whether Officer Clark violated Hoag's Fourth Amendment rights, and similar state constitutional rights, by demanding and then seizing Hoag's log book, and whether the City of Quincy can be liable for any alleged constitutional violations based on Officer Clark's conduct. Defendants contend that Officer Clark had legal authority to request Hoag's log book, that even if he did not, he is entitled to qualified immunity, and that because no constitutional violation occurred, the city cannot be held liable.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This doctrine balances two important government interests "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

A court must answer two questions to determine whether an officer is entitled to qualified immunity: (1) "whether the facts that a plaintiff has

**ORDER GRANTING DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT** # 3

alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id*. at 232. In order to "best facilitate the fair and efficient disposition of each case," a trial court has discretion as to which order to address the two prongs. *Id*. at 242.

In this case, the Court will first analyze the "clearly established" prong and finds the right at issue was not clearly established at the time of Officer Clark's alleged misconduct. Hoag's principle argument is that, under Washington state law, the state patrol "shall" perform inspections of commercial motor vehicles. RCW 46.32.010(4). In turn, these inspections include, among other things, inspection of "hours of service," or log books. RCW 46.32.010(1). Under this reading, the state patrol and only the state patrol may request a commercial driver's log books. Hoag argues that because Officer Clark was not authorized by RCW 46.32.010 to inspect his log book, Officer Clark violated Hoag's privacy rights under the Fourth Amendment of the United States Constitution and Article I, § 7 of the Washington State Constitution. Without deciding whether Officer Clark's actions violated Hoag's constitutional rights, the Court finds that whatever constitutional privacy right Hoag may have in his log book was not clearly established.

While Hoag's interpretation of RCW 46.32.010 is not an unreasonable one, it is hardly clear that it is the correct interpretation or that it is clearly established. First, as Hoag's Motion to Certify Question of State Law concedes, "counsel has been unable to find any Washington cases interpreting RCW 46.32.010." ECF No. 15. Likewise, this Court has been unable to locate any federal or state case law interpreting the statute. Second, although Hoag's reading of the statute relies on one common cannon of statutory interpretation—expressio unius est exclusion alterius (the expression of one thing is the exclusion of another)—this interpretation would lead to other implausible outcomes. Hoag's contention is that

**ORDER GRANTING DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT** # 4

because state patrol officers "shall" be the ones conducting inspections of commercial vehicles, other law enforcement officers shall not conduct inspections. Applying the same mode of interpretation to the same statute, local law enforcement officers would be unable to inspect the driver's qualification or driver's license of any person operating a commercial motor vehicle, school bus, or private carrier bus—a dubious interpretation at best. Third, even if the statute gives the state patrol the sole authority to conduct inspections it does not necessarily follow that Officer Clark violated Hoag's rights secured to him by either the Washington State Constitution or the United States Constitution. Finally, Officer Clark consulted a state trooper to seek to confirm his authority to request the log book. Regardless of whether he received accurate information or not, Officer Clark could not be said to have been "plainly incompetent" or to have "knowingly violate[d] the law," even when viewing the evidence in the light most favorable to Hoag. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal citation omitted).

Viewing the evidence in the light most favorable to Hoag, it appears Officer Clark may have acted very poorly and may have exceeded his lawful authority. That alone, however, is not enough to overcome qualified immunity. Without deciding whether Officer Clark had legal authority to request Hoag's law book and to detain Hoag after he refused to produce it, the Court finds Officer Clark is entitled to qualified immunity because the right at issue was not clearly established at the time.

Hoag also brings claims against the City of Quincy for the same acts under agency and respondeat superior doctrines. A municipality "[cannot be] liable under § 1983 based on the common-law tort theory of respondeat superior." *Castro v. City of Los Angeles*, 797 F.3d 654, 670 (9th Cir. 2015). A municipality, such as the City of Quincy, is only responsible if its employee was acting pursuant to an official policy, a custom, or an act by an individual with policy-making

**ORDER GRANTING DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT** # 5

authority which is tantamount to a policy. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978). Hoag does not allege any official policies, customs, or acts by any individual with policy-making authority. At most, Hoag's pleadings could be inferred to allege a failure-to-train claim against the City for failing to instruct Officer Clark on his duties vis-à-vis the inspection of log books. Although a municipality may be held liable under § 1983 for failure-to-train, culpability under this theory is "most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The failure-to-train at issue "must amount to the deliberate indifference to the rights of persons with whom the untrained employees came into contact." *Id.* citing *Canton*, 489 U.S. at 388. In turn, deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence. *Connick*, 563 U.S. at 61. Hoag presents no evidence and no developed legal argument as to how any failure by the city led to the alleged constitutional violation. No reasonable juror could find the city liable for Officer Clark's actions.

Viewing the evidence in the light most favorable to Hoag, the Court finds Officer Clark is entitled to qualified immunity because the alleged right at issue was not clearly established. Additionally, the Court finds the City of Quincy cannot be held liable under a *Monell* theory. Summary judgment is granted to the defendants on all claims.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 9, is **GRANTED**.

2. Plaintiff's Motion to Certify Question of State Law, ECF No. 15, is **DENIED**.

3. Judgment shall be entered in favor of all defendants.

4. All previously set court dates, including the trial date, are **STRICKEN**.

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** # 6

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, enter judgment, provide copies to counsel and Plaintiff, and **close the file**.

**DATED** this 7th day of December 2015.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** # 7